United States District Court
Southern District of Texas

**ENTERED**

September 28, 2022

Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CHANEL E.M. NICHOLSON, | § | |
| | § | |
| *Plaintiff,* | § | |
| v. | § | CIVIL ACTION NO. 4:21-cv-02624 |
| | § | |
| A.H.D. HOUSTON, INC. d/b/a | § | |
| CENTERFOLDS, *et al.*, | § | |
| | § | |
| *Defendants.* | § | |
| | § | |

## ORDER

Pending before the Court is the Fourth Motion to Dismiss (Doc. No. 48) filed by

Defendants A.H.D. Houston, Inc., d/b/a Centerfolds ("Centerfolds"), W.L. York, Inc., d/b/a Cover

Girls ("Cover Girls"), D WG FM, Inc. d/b/a Splendor ("Splendor"), Ali Davari, and Hassan Davari

("Individual Defendants") against Plaintiff Chanel Nicholson's Third Amended Complaint.[1] (Doc.

No. 47). Plaintiff filed a response in opposition (Doc. No. 49) and Defendants replied. (Doc. No.

50). Having considered Plaintiff's Third Amended Complaint, the parties' briefs, and the

applicable law, the Court hereby **GRANTS** in part and **DENIES** in part Defendants' Fourth

Motion to Dismiss.

### I.    Factual Background

According to the Third Amended Complaint, Plaintiff is African American and was a

dancer who performed at adult entertainment clubs Centerfolds, Splendor, and Cover Girls for

varying periods of time between September 2013 and November 2017. (Doc. No. 47 at 3). These

---

[1] Plaintiff has filed an initial Complaint, Amended Complaint, Second Amended Complaint, and Third Amended Complaint. (Doc. Nos. 1, 9, 15, 47). In response, Defendants filed an initial Motion to Dismiss, a First Motion to Dismiss, Second Motion to Dismiss, and Third Motion to Dismiss. Thus, the *Fourth* Motion to Dismiss attacks the *Third* Amended Complaint.

clubs are separate corporate entities and each is named as a Defendant. (*Id.* at 4). Individual Defendants Ali Davari and Hassan Davari currently serve as president and vice president, respectively, of all three clubs. (*Id.*).

Plaintiff became a dancer at Centerfolds in August 2013 after signing an agreement with the club. (Doc. No. 47-1). This agreement was entitled "Licensing and Access Agreement." (Doc. Nos. 47-1, 47-2, 47-3). The agreements established that Plaintiff was an independent contractor and that either side could terminate the relationship at will. (*Id.*). Under the terms of this agreement, and agreements subsequently signed with Splendor and Cover Girls, Plaintiff was permitted to set her own hours and shifts. (Doc. Nos. 47-1, 47-2, 47-3). Plaintiff alleges that at Centerfolds, she was regularly turned away by the club's door staff when she showed up to dance because "too many Black dancers were already working" and "management did not like more than a small number of Black dancers on the premises at the same time." (Doc. No. 47 at 6). In addition to being turned away when she was ready to work, Plaintiff alleges that managers at Centerfolds would regularly fine her and other dancers for breaking "unwritten" rules. She contends African American dancers regularly received larger fines than white dancers. (*Id.*) In late September 2014, Plaintiff claims she was "barred" from Centerfolds. (*Id.* at 6-7).

After Centerfolds "barred" her, Plaintiff became a dancer at Splendor, where she signed an agreement similar to the one she signed at Centerfolds. (Doc. No. 47-2). Like her experience at Centerfolds, Plaintiff alleges she was often turned away by club staff who claimed "too many Black girls" were working. (Doc. No. 47 at 7). Plaintiff also claims that managers at Splendor would similarly fine her and other Black dancers and penalize them for paying insufficient "tips" to the staff. (*Id.*). Plaintiff does not specify in her Third Amended Complaint a date when she left Splendor, but it was before she began work at Cover Girls and was apparently triggered when the

club "barred" her after she refused to pay a fine in exchange for access to the premises. (*Id.* at 7-8).

Around November 2016, Plaintiff began dancing at Cover Girls and entered into an agreement with the club. (Doc. No. 47-3). While at Cover Girls, Plaintiff alleges she was required to pay a fee every time she performed and was forced to tip managers and other employees for access to the premises and to play her desired music. (Doc. No. 47 at 8). In late November 2017, Plaintiff claims she arrived to dance at Cover Girls and was "barred" after being informed again that there were "too many Black girls" working already. She also alleges this had happened previously.

Subsequently, she did not dance for an extended time period because she became pregnant. (*Id.* at 9). In June 2021, Plaintiff went back to Centerfolds in hopes of "reviv[ing] her career as a dancer" and requested a position. (*Id.*). Centerfolds informed Plaintiff that they were not hiring. (*Id.*). After being rejected, Plaintiff saw several white dancers enter the club to change and begin their shifts. (*Id.*). Similarly, on August 11, 2021, Plaintiff went to Splendor, requested a position and was told they were not hiring. (*Id.*). While at Splendor, Plaintiff again saw white dancers enter the club to begin their shifts. (*Id.*).

## II.    Procedural History

On August 12, 2021, Plaintiff filed this action, which initially appeared to only assert various claims for unlawful and intentional discrimination under 42 U.S.C. § 1981. This Court then provided leave for Plaintiff to amend her initial pleadings, and Plaintiff filed an Amended Complaint on September 20, 2021 (Doc. No. 9) and a Second Amended Complaint on October 5, 2021 (Doc. No. 15). Prior to filing her Third Amended Complaint on June 24, 2022, Defendants filed three separate 12(b)(6) motions to dismiss. (Doc. Nos. 6, 14, 20). These are denied as moot.

Despite multiple prior attempts, Plaintiff's Third Amended Complaint (Doc. No. 47) still has significant omissions and ambiguities regarding the precise causes of action Plaintiff is trying to plead.[2] Plaintiff's Third Amended Complaint now appears to assert two causes of action: (1) breach of contract and (2) unlawful and intentional discrimination under 42 U.S.C. § 1981.[3] In addition, Plaintiff is also requesting declaratory relief from this Court by deeming certain provisions of the agreements she entered into with Centerfolds, Splendor, and Cover Girls unconscionable and unenforceable.[4] In response to Plaintiff's Third Amended Complaint, Defendants collectively filed a motion to dismiss based on lack of subject matter jurisdiction under 12(b)(1) and failure to state a claim under 12(b)(6). (Doc. No. 48). Plaintiff responded (Doc. No. 49) and Defendant replied (Doc. No. 50).

### III.   Legal Standard: 12(b)(6) Motions

A defendant may file a motion to dismiss a complaint for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). To defeat a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing

---

[2] To the extent Plaintiff intended to plead a cause of action not addressed by this Order, the Court dismisses those claims for failure to state enough facts to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[3] Although the Third Amended Complaint repeatedly fails to specifically and clearly address what grounds most of Plaintiff's § 1981 claims are proceeding under (i.e. failure to hire, wrongful termination, etc.) and is often ambiguous or appears to plead as one vast, general § 1981 claim, this Court has chosen to read the complaint in the light most favorable to the Plaintiff and addresses the claims separately where the facts would suggest a claim is applicable.

[4] The Court acknowledges that Defendants moved to dismiss under 12(b)(1) concerning Plaintiff's request for declaratory relief. The Court, however, will not be addressing this part of Plaintiff's Third Amended Complaint in this Order because the contractual provisions Plaintiff is contesting are irrelevant to this dispute since enforcement of the arbitration clause was waived by the parties in open court. The only other provisions raised in the declaratory judgment section of the Third Amended Complaint are the indemnity provisions that are clearly inapplicable here. *Baugh v. A.H.D. Houston, Inc.*, 2020 WL 2771251 (S.D. Tex. 2020).

4

*Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). The Court is not bound to accept factual assumptions or legal conclusions as true, and only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 678–79. When there are well-pleaded factual allegations, the court assumes their veracity and then determines whether they plausibly give rise to an entitlement to relief. *Id.*

To determine whether to grant a Rule 12(b)(6) motion, a court may look only to allegations in a complaint to determine their sufficiency. *Santerre v. Agip Petroleum Co., Inc.*, 45 F.Supp.2d 558, 568 (S.D. Tex. 1999); *Atwater Partners of Texas LLC v. AT & T, Inc.*, 2011 WL 1004880 (E.D. Tex. 2011). A court may, however, also consider matters outside the four corners of a complaint if they are incorporated by reference, items subject to judicial notice, matters of public record, orders, items appearing in the record of a case, and exhibits attached to a complaint whose authenticity is unquestioned. *See Chawla v. Shell Oil Co.*, 75 F.Supp.2d 626, 633 (S.D. Tex. 1999); *Brock v. Baskin-Robbins USA Co.*, 113 F.Supp.2d 1078, 1092 (E.D. Tex. 2000) (at motion to dismiss for failure to state a claim, a court may consider an indisputably authentic document that is attached as an exhibit, if plaintiff's claims are based on the document).

### IV.    Analysis - § 1981 Claims

A. <u>Section 1981 Claims Against Centerfolds and Splendor Prior to 2021</u>

Defendants first contend that this Court should dismiss Plaintiff's intentional discrimination claims against Centerfolds and Splendor because they are time barred by the applicable statute of limitations. Under Rule 12(b)(6), a statute of limitations defense supports dismissal if "it is evident from the plaintiff's pleadings that the action is barred." *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003).

42 U.S.C. § 1981 specifically applies to and prohibits intentional racial discrimination in the making and enforcing of contracts. 42 U.S.C. § 1981(a). As enacted, § 1981 does not have an explicit statute of limitations. *See* 42 U.S.C. § 1981. Initially, § 1981 claims only applied to causes of action arising out of the formation of a contract. *Patterson v. McLean Credit Union*, 491 U.S. 164 (1976) (overruled by Civil Rights Act of 1991 and *Jones v. R.R. Donnelley & Sons Co.*). The enactment of the Civil Rights Act of 1991, however, expanded the scope of § 1981 claims to also include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).

Following the enactment of the Civil Rights Act of 1991, the United States Supreme Court in *Jones v. R.R. Donnelley & Sons Co.* held that a general four-year statute of limitations applies in § 1981 claims "if the plaintiff's claim against the defendant was made possible" by the 1991 statutory changes or a later statute. *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004). Based on the 1991 statutory changes and the Supreme Court's holding in *Jones*, causes of action involving intentional discrimination after contract formation are subject to a four-year statute of limitations. *Id.* at 383.

If a § 1981 cause of action was already available to plaintiffs prior to the enactment of the Civil Rights Act of 1991, courts apply the most analogous state statute of limitations. *Id.* Failure to hire claims, for example, were available to plaintiffs prior to the 1991 statutory amendments because the cause of action arises before a contract is formed between the parties.[5] Thus, the analogous state law applies. Under Texas law, the Texas Commission on Human Rights Act ("TCHRA") is the most analogous, since it was enacted to serve as a framework for employment discrimination claims and a complement to federal anti-discrimination statutes designed to protect employees. Tex. Lab. Code Ann. § 21.001(4); *see Gorman v. Verizon Wireless Texas, L.L.C.*, 753 F.3d 165 (5th Cir. 2014) (applying Texas law and holding that substantive law governing Title VII and related claims and the TCHRA are identical). Although the TCHRA does not specifically enumerate a cause of action based on a failure to hire, these claims are most analogous to general employment discrimination causes of action brought under the TCHRA—which are subject to a two-year statute of limitations. V.T.C.A., Lab. Code § 21.256; *see generally Welsh v. Fort Bend Independent School District*, 860 F.3d 762, 764 (5th Cir. 2017) (affirming the lower court's dismissal of a TCHRA lawsuit filed past the two-year statute of limitations); *see generally In re United Services Auto. Ass'n*, 307 S.W.3d 299, 310 (Tex. 2010).

Furthermore, although the analogous state law largely supplies the applicable statute of limitations period in § 1981 claims, federal law determines when the cause of action period accrues. *Perez v. Laredo Junior Coll.*, 706 F.2d. 731, 733 (5th Cir. 1983). Accrual of a claim under § 1981 commences when the plaintiff first has actual knowledge of the violation or has knowledge of facts that, in the exercise of due diligence, would have led to actual knowledge. *In re Monumental Life Ins. Co.*, 365 F.3d 408, 420 (5th Cir. 2004). Determining the accrual date thus

---

[5] Failure to promote is also included in this list as being subject to a two-year statute of limitations but is omitted from this analysis because it is not applicable to the facts in this case based on Plaintiff's Third Amended Complaint.

requires this Court to "identify precisely the 'unlawful employment practice' of which the plaintiff complains." *Delaware State College v. Ricks*, 449 U.S. 250, 257 (1980). After identifying the relevant discriminatory act, the court must identify the point when plaintiff can be charged with knowledge of the act. *Ramirez v. City of San Antonio*, 312 F.3d 178, 182 (5th Cir. 2002) ("An employee's claim accrues at the moment the employee believes (or has reason to believe) that he is a victim of discrimination").

Plaintiff argues at length in her response to the Fourth Motion to Dismiss that her § 1981 claims against Centerfolds and Splendor are not time barred. In particular, Plaintiff repeatedly claims that she was not actually "terminated" by either club in 2014 and 2016 and contends that there is a distinction between being "barred" and being "terminated." Plaintiff further argues that because she experienced "continuous extortion for her continued access" to Centerfolds and Splendor, the accrual of the relevant statute of limitations should reset and start over each time a new violation takes place. Under this framework, Plaintiff is asking the Court to consider the accrual date of her claims against Centerfolds and Splendor to begin in June and August of 2021, rather than September 2014 and November 2016, respectively, when she was initially "barred."

Plaintiff's interpretations of these facts were made in her response to the Fourth Motion to Dismiss. (Doc. No. 49). No mention of the proposed distinction between being "barred" and "terminated" or her experience of "continuous extortion" was included in her Third Amended Complaint. Since these factual arguments were made in the response to the Fourth Motion to Dismiss instead of within Plaintiff's Third Amended Complaint, this Court, while able to evaluate these contentions as arguments, is unable to consider them as pleaded facts. *See Santerre v. Agip Petroleum Co., Inc.*, 45 F.Supp.2d 558, 568 (S.D. Tex. 1999); *Atwater Partners of Texas LLC v. AT & T, Inc.*, 2011 WL 1004880 (E.D. Tex. 2011). As such, this Court is limited to construing and

analyzing only the facts pled in the Third Amended Complaint using the Rule 12 presumption of truth accorded to Plaintiff. *Id.*

Although it is far from clear from the Third Amended Complaint what specific grounds Plaintiff is asserting her § 1981 claims against Centerfolds and Splendor under, the facts suggest that Plaintiff has lodged at least two claims subject to the four-year statute of limitations: (1) being "barred" at the clubs due to "Defendants' racist policy," and (2) intentional discrimination due to the clubs' alleged mandatory tip sharing policy.

Here, the statute of limitations bars all of Plaintiff's § 1981 claims against Centerfolds and Splendor prior to August 2017. Plaintiff danced at Centerfolds from approximately August 2013 to September 2014 and at Splendor from September 2014 to November 2016. Regardless, her claims against Centerfolds and Splendor expired sometime in the period between September 2018 and November 2020 (at the latest) and were long expired by the time Plaintiff filed this action in August 2021.

B. Section 1981 Failure to Hire Claim Against Centerfolds in 2021

Plaintiff alleges that in June 2021, Centerfolds unlawfully turned her away when she was seeking a dancer position. The same ambiguities concerning the manner in which these causes of action were pleaded applies here as well. Nevertheless, the Court, reading the Third Amended Complaint in the light most favorable to the Plaintiff, interprets her complaint to allege a failure to hire claim under § 1981. Defendants argue that this claim is barred both by the applicable statute of limitations under § 1981 and by her failure to state a claim under 12(b)(6).

To adequately assert a violation of § 1981, a plaintiff must first show that: (1) she is a member of a racial minority, (2) there was an intent to discriminate on the basis of race by the defendant, and (3) the discrimination concerned one or more of the activities enumerated in the

statute. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 347 (2013); *Green v. State Bar of Texas*, 27 F.3d 1083, 1086 (5th Cir. 1994). Furthermore, the plaintiff must plead and prove that race was the but-for cause of the discrimination and loss of plaintiff's legally protected right. *Comcast Corporation v. Nat'l Ass'n. of African American-Owned Media*, 140 S.Ct. 1009, 1019 (2020). Under the TCHRA—the analogous Texas state law governing the statute of limitations for a failure to hire claim—discrimination-based failure to hire claims are subject to a two-year statute of limitations. *In re United Services Auto. Ass'n*, 307 S.W.3d 299 at 310; *see also Welsh*, 860 F.3d at 763.

Although Plaintiff's cause of action may not be time barred, the Court finds that, after multiple complaints, she still fails to plausibly state a claim under Rule 12(b)(6). Plaintiff asserts that Centerfolds failed to hire her on June 24, 2021. Plaintiff is African American and thus a member of a racial minority and appears to be arguing that racial discrimination prohibited by § 1981 took place. Plaintiff fails, however, to plausibly plead that race was the but-for cause of Centerfolds' failure to hire. According to the Third Amended Complaint, Plaintiff entered Centerfolds, requested a position as a dancer, and was told they were not hiring. (Doc. No. 47 at 9). After she was rejected, Plaintiff claims she saw several white dancers enter the premises in their street clothes, change, and then start their shifts. (*Id.*). Plaintiff also asks the Court to consider the declaration of Andrew Skwera ("Skwera"), who worked as a manager at Cover Girls from 2015 to 2020 and several other clubs owned by Individual Defendants for approximately 20 years. (Doc. No. 47-4).

Even if the alleged facts are presumed true and viewed in the light most favorable to Plaintiff, the Plaintiff has not pled sufficient facts to support that race was the but-for cause of Centerfolds' failure to hire her. Being told by Centerfolds that they were not hiring, after all, does

not automatically lead one to plausibly infer that the failure to hire was motivated by intentional discrimination. Seeing white dancers enter the premises to begin their shifts also does not point to a plausible inference that Defendants chose to hire these individuals instead of Plaintiff. Instead, the facts might equally suggest that these dancers may already have been hired at the club, since they entered the premises, changed their clothes, and began their shifts—and simply put, that Defendants were not hiring at the time. Skwera's declaration does not remedy the insufficiency of Plaintiff's pleadings. Skwera was never a manager at Centerfolds, the club at issue in this specific claim. In addition, Skwera stopped working for any clubs owned by Individual Defendants by 2020, and Plaintiff's rejection took place in 2021.

None of the allegations Plaintiff has pleaded (even when considering the Skwera affidavit) suggest to this Court that Plaintiff has carried her burden of plausibly pleading that her race was the but-for reason Centerfolds failed to hire her. Thus, this Court finds that Defendant's motion to dismiss Plaintiff's 2021 § 1981 failure to hire claim against Centerfolds should be granted.[6]

C. Section 1981 Claims Against Cover Girls

Defendants also argue that Plaintiff's claims against Cover Girls are barred both by the applicable statute of limitations under § 1981 and Plaintiff's failure to state a claim under Rule 12(b)(6). Specifically, Defendants argue that Plaintiff has failed to "plead plausible facts demonstrating that her § 1981 claim against Cover Girls first accrued within the four-year limitations period, on or after August 12, 2017." (Doc. No. 48 at 14).

---

[6] Although Plaintiff's 2021 failure to hire claim against Splendor pleads nearly identical facts from as those she pleaded against Centerfolds on June 24th, Defendant Splendor did not file a motion to dismiss claim under 12(b)(6). (Doc. No. 48 at 16). In fact, Defendants only argue in their Fourth Motion to Dismiss that claims against Splendor are time barred (*Id.* at 11) and that Plaintiff has failed to state a § 1981 claim against Centerfolds and Individual Defendants. (*Id.* at 16). Since Defendants have not included Splendor in moving to dismiss the failure to hire claims from 2021, the claim survives the Fourth Motion to Dismiss.

Although it is, again, far from clear precisely what grounds Plaintiff is relying on in her Third Amended Complaint, viewing the pleaded facts in the most favorable light, Plaintiff's § 1981 claims against Cover Girls include: (1) intentional discrimination because of the mandatory tip sharing regime and Plaintiff's inability to play music, and (2) being "barred" from Cover Girls in November of 2017 because too many Black dancers were already working. (Doc. No. 47 at 8). Both § 1981 claims are subject to a four-year statute of limitations.

    1.  <u>Mandatory Tip Sharing & Music Claims</u>

According to the Third Amended Complaint, Plaintiff worked six shifts per week from November 2016 until "late" November 2017. (Doc. No. 47 at 8). In their Fourth Motion to Dismiss, Defendants note that Plaintiff failed to provide any facts "that would lead one to believe that the very first time Plaintiff faced a discriminatory act of exclusion at Cover Girls (and that her claim accrued) [was] at some point between August 12, 2017 and November 30, 2017." (Doc. No. 48 at 15). In Plaintiff's response, she argues that Defendants' statement only proves that "it is possible that the very first time Plaintiff faced a discriminatory act of exclusion at Cover Girls…was at some point between August 12, 2017 and November 30, 2017." (Doc. No. 49 at 9).

This Court finds Plaintiff's argument lacking substance. First, this response ignores the fact that Plaintiff pleaded that she was discriminated against "every time she came to work" and she started work at Cover Girls in November 2016. Thus, even if the facts pled within the Third Amended Complaint are read in a light most favorable to Plaintiff and presumed true, Plaintiff has still failed to plead enough facts to *plausibly* suggest that the first instance of discriminatory conduct occurred after August 12, 2017, and thus fall within the statute of limitations. Moreover, the very fact that Plaintiff responds to Defendants' statement by nakedly claiming "it is possible" that the first time Plaintiff experienced a discriminatory act of exclusion was after August 2017

12

only emphasizes this point. Under Rule 12(b)(6), "the plausibility standard is not akin to a 'probability requirement,'" and requires this Court to draw a reasonable inference between what Plaintiff has pled in her complaint and Defendants' alleged misconduct. *Ashcroft*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 556). On its face, and without more, Plaintiff's Third Amended Complaint does not suggest that the first instance of discrimination Plaintiff experienced was after August 12, 2017.

Plaintiff further argues that her claim is within the statute of limitations because accrual should begin in late November 2017, when she was allegedly "barred" from Cover Girls. As discussed previously, accrual of the applicable limitations period requires a court to take two steps: (1) identify the specific unlawful employment practice alleged, and (2) determine the moment when a plaintiff can be charged with knowledge of the act. *Delaware State College v. Ricks*, 449 U.S. 250, 257; *Ramirez v. City of San Antonio*, 312 F.3d 178, 182 (5th Cir. 2002). Knowledge commences when the plaintiff has actual knowledge of the act, or has knowledge of facts that, with due diligence, would have led to actual knowledge. *In re Monumental Life Ins. Co.*, 365 F.3d at 420. Furthermore, the accrual date should begin from the time of the discriminatory act, "not upon the time at which the consequences of the act become most painful." *Ricks*, 449 U.S. at 258.

Here, Plaintiff has done nothing more than claim that she experienced discriminatory actions—the alleged mandatory tip sharing arrangement or the refusal to play her chosen music—at some point between when she started dancing at Cover Girls in November 2016 and when she was "barred" in November 2017. Given that Plaintiff states in the Third Amended Complaint that during this time period she worked "six shifts per week with each shift being about six to eleven hours" and was "required to pay a fee to Cover Girls varying from $20 to $80...every time she came to work," (Doc. No. 47 at 8) the first instances of discriminatory conduct giving rise to

accrual of the limitations period could have occurred as early as November 2016. If Plaintiff's allegations are presumed true, she potentially would have been on notice of the discriminatory act as early as her first shift, since she states she was forced to pay a fee "every time she came to work." (*Id.*). Thus, the disparity in treatment was evident from the first time she came to work in 2016.

Finally, Plaintiff argues that the expiration of the statute of limitations can be averted by applying the continuing violations doctrine. Under the continuing violations doctrine, a plaintiff is relieved from establishing that the discriminatory conduct she experienced occurred within a specified time period if she can show a series of related acts, one or more of which falls within the limitations period. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113, 122 (2004). This doctrine, however, has since been limited by the United States Supreme Court to apply only to § 1981 claims alleging a hostile work environment. *Id.*; *see also Heath v. Board of Supervisors for the Southern University and Agricultural and Mechanical College*, 850 F.3d 731, 737 (5th Cir. 2017) (holding that claims alleging discrete acts of discrimination are not subject to the continuing violation doctrine, but hostile workplace claims are). Since Plaintiff has failed to meet the threshold requirement of the continuing violations doctrine—to simply plead a cause of action alleging a hostile work environment—this Court cannot consider whether the doctrine applies to Plaintiff's claims.

This Court finds that Plaintiff has failed to plead sufficiently plausible facts to support that her claim accrued within the statute of limitations. The Court thus concludes that Plaintiff's § 1981 claims against Cover Girls alleging intentional discrimination from being repeatedly fined and unable to play the music of her choice are time barred and should be dismissed.

2.  Being "Barred" Because of Race

Plaintiff claims that in late November 2017, she arrived at Cover Girls wanting to dance but was told by the manager that she could not perform because there were already "too many Black girls" and was subsequently barred from the club. (Doc. No. 47 at 8). Plaintiff also alleges that white dancers remained at the club following Plaintiff's departure that night and were free to continue working their shifts. (*Id.* at 9).

If Plaintiff's facts are presumed true and viewed in the light most favorable to her, Plaintiff has plausibly alleged sufficient facts to establish that race was a but-for cause of her being "barred" from Cover Girls. This allegation differs from Plaintiff's previous § 1981 allegations in several ways. First, although Plaintiff only provides an approximate date that she was "barred" from Cover Girls, it is within the four-year statute of limitations. Second, Plaintiff satisfied § 1981's but-for requirement by alleging that she was told directly that but-for the presence of "too many Black girls" working that evening already, Plaintiff would have been allowed to perform at Centerfolds. Third, based on the additional facts Plaintiff provides about white dancers remaining at the club and being allowed to work their shifts—presumably because they were not subject to the same allegedly discriminatory actions as Plaintiff—this Court finds that Plaintiff has carried her burden under 12(b)(6). These allegations are sufficient to allow one to draw a reasonable inference that race was, as Plaintiff described, a but-for cause as to why she was "barred" from the Cover Girls.

Since Plaintiff has pled sufficient facts to satisfy the required elements of her § 1981 claim against Cover Girls from late November 2017, Plaintiff's claim survives Defendants' Fourth Motion to Dismiss.

15

D. Section 1981 Claims Against Individual Defendants

Plaintiff also brings § 1981 claims against Individual Defendants as the "sole named officers and directors" of Centerfolds, Splendor, and Cover Girls. (Doc. No. 47 at 4). In her Third Amended Complaint, Plaintiff argues that Individual Defendants would "sometimes visit the Defendant Clubs," so they observed the exclusion of Black dancers and enforced the alleged discriminatory policies taking place. (*Id.*). Plaintiff further alleges that Individual Defendants are "at least guiding spirits" behind the enforcement of the alleged discriminatory policies and therefore personally liable. (*Id.*). Defendants argue that Plaintiff has failed to state a claim because she does not allege that either of the Individual Defendants directly employed, contracted with, or ordered any of the alleged discrimination that she experienced. (Doc. No. 48 at 17).

The law on individual liability in § 1981 claims is unsettled in the Fifth Circuit. *See Felton v. Polles,* 315 F.3d 470 (5th Cir. 2002) (holding that "individual liability under Section 1981…is not as established under Fifth Circuit jurisprudence"). The Fifth Circuit has held, however, that § 1981 liability is possible against an individual defendant if that individual is "essentially the same" as the State for the purposes of the complained-of conduct." *Felton v. Polles,* 315 F.3d 470, 481 (5th Cir. 2002) (quoting *Bellows v. Amoco Oil Co.,* 118 F.3d 268, 274 (5th Cir. 1997)). There appears to be no Fifth Circuit case that recognizes § 1981 claims to "third parties who are not in some form of employment relationship with the plaintiff as employer, coworker, or supervisor." *McIntyre v. Roly's Trucking, Inc.,* No. 4:14-CV-193-A, 2014 WL 1692782, at *2 (N.D. Tex. 2014). Other courts have held, however, that employees who did not exercise supervisory authority over a coworker could not held individually liable under § 1981. *Miller v. Wachovia Bank, N.A.,* 541 F.Supp.2d 858 (N.D. Tex. 2008) (applying to a hostile work environment claim).

16

This Court does not find that Plaintiff has pled sufficient facts against Individual Defendants to plausibly support a claim to survive a motion to dismiss. Although the Fifth Circuit is unsettled in deciding whether individual liability exists under in § 1981 claims, it appears that Plaintiff must, at minimum, allege that Individual Defendants exercised supervisory or managerial authority over her specifically. She pleads the actual individuals who turned her away were the door staff, not Individual Defendants. Even if Plaintiff's allegations are viewed in the light most favorable to her, Plaintiff does not attribute any of the alleged facts of discriminatory conduct to these individuals. (Doc. No. 47 at 4). Plaintiff fails to allege that Individual Defendants are functionally the same as the clubs. Furthermore, the allegations Plaintiff makes against Individual Defendants are not facts, but speculation or legal conclusions. Without more, it appears that Plaintiff does not even assert that Individual Defendants caused injury to her specifically, which suggests that Plaintiff lacks the standing to bring a claim against Individual Defendants at all.

Since Plaintiff falls short of pleading enough facts to even suggest that she has standing to assert a § 1981 claim against Individual Defendants in the first place, or that there is a causal connection between the discrimination she experienced while working at the clubs and Individual Defendants' behavior. There is no Fifth Circuit authority that holds individuals liable for being "guiding spirits." Thus, the Court grants the Individual Defendants' motion to dismiss this claim.

## V.     Analysis – Breach of Contract Claims

General breach of contract claims are governed by state law, so the applicable Texas statute of limitations is four years. *Pagosa Oil and Gas, L.L.C. v. Marrs and Smith Partnership*, 323 S.W.3d 203, 217 (Tex. App.—El Paso 2010, pet. denied). In Plaintiff's Third Amended Complaint, she brings breach of contract claims against Centerfolds, Splendor, and Cover Girls. (Doc. No. 47

at 12). Plaintiff's breach of contract claims against Centerfolds and Splendor, however, are time barred by the statute of limitations. (Doc. Nos. 47-1, 47-2).[7]

A. Relation-Back of Cover Girls Agreement

Plaintiff alleges that Cover Girls breached its contract with Plaintiff when it "barred" her from the club in late November 2017. (*Id.*). In their Fourth Motion to Dismiss, Defendants argue that Plaintiff's breach of contract claim against Cover Girls is time barred because she failed to bring the cause of action before the statute of limitations expired in approximately late November 2021. According to Defendants, because Plaintiff's breach of contract claim was first raised on June 15th, 2022, when the Third Amended Complaint was filed, it is time barred.[8]

Plaintiff argues that the basis of her breach of contract claim is valid because the agreement should relate-back to August 12, 2021, the date that she filed this lawsuit. (Doc. No. 47 at 12). In her Third Amended Complaint, Plaintiff specifically alleges that she: (1) had no knowledge of the existence of the Cover Girls contract because she did not remember signing a contract with any of the three clubs, (2) would have brought a breach of contract claim against Cover Girls within the statute of limitations had the contract been produced by the Defendants in November 2021 as required by this Court's initial discovery disclosures deadline, and (3) did not demand the

---

[7] Even if Plaintiff's allegations are viewed in the light most favorable to her and the alleged breach of contract took place when she was "barred" from the clubs in September 2014 and November 2016, her claim against Centerfolds expired in September of 2018 and her claim against Splendor expired in November 2020. The Plaintiff at points contends that "barring her" from dancing was not a breach of contract. If this is true, the result would still be a dismissal of the claim because if barring her was not a contractual breach, then she has not pleaded an act that was a breach of either the Centerfolds or Splendor contract.

[8] The contract between Plaintiff and Cover Girls was not made available to Plaintiff until Defendants produced it on April 5, 2022, after the statute of limitations had expired. Based on this Court's initial discovery protocols in employment disputes, both parties were required to produce all personnel records by an agreed upon deadline of November 3, 2021. Defendants claimed that they were unable to locate any personnel records for Plaintiff, and thus did not produce any documents by the deadline. On April 5, 2022, Defendants produced the contract between Plaintiff and Cover Girls. Defendants also produced contracts between Plaintiff and Centerfolds and Splendor, but those contracts are omitted from this analysis because claims under those contracts are clearly time barred by the four-year statute of limitations.

personnel records be produced after the November 2021 deadline because she had been told by Defendants that no such records could be located. (Doc. No. 47 at 12, 13).

Defendants claim that because Plaintiff failed to plead a breach of contract claim in her initial complaint, that the Cover Girls contract does not arise from the same transaction or occurrence. Plaintiff's new cause of action is not based on a wholly new, distinct, or different transaction. Her allegations are rooted in her original § 1981 claims against Cover Girls and the alleged discrimination she experienced.

Under federal law, an amendment to a pleading relates back to the date of the original pleading when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed: R. Civ. P. 15(c)(1)(B). Under Texas's relation-back law, if an amended pleading adds a new cause of action arising from the same transaction or occurrence forming the basis of the claims made in the original pleading, then the amended pleading relates back to the original filing. Tex. Civ. Prac. Rem. Code § 16.068; *Delhomme v. Commission for Lawyer Discipline*, 113 S.W.3d 616, 621 (Tex. App.— Dallas 2003, no pet.); *TV Azteca, S.A.B. de C.V. v. Trevino* Ruiz, 611 S.W.3d 24, 32 (Tex. App.— Corpus Christi-Edinburg 2020, no pet.); Tex. Civ. Prac. & Rem. Code Ann. § 16.068 (Vernon 1997). "A transaction is defined as a set of facts that gives rise to the cause of action premised thereon." *980 Brewster v. Columbia Medical Center of McKinney Subsidiary, L.P.,* 269 S.W.3d 314, 317–18 (Tex.App.—Dallas 2008, no pet.) (internal quotations omitted).

The Court concludes that, under either Texas or federal law, Plaintiff's breach of contract claim against Cover Girls does in fact relate back to her initial pleadings. "The federal rule allows relation back if the proposed amendment arose out of the same 'conduct, transaction, or occurrence' as the claim asserted in the original petition. Texas law provides that the amendment

relates back unless it 'is wholly based on a new, distinct, or different transaction or occurrence.'" *Id.* Furthermore, "'[a] transaction is defined as a set of facts that gives rise to the cause of action premised thereon.'" *Brewster*, 269 S.W.3d at 317-318 (quoting *Texas Disposal Sys. Landfill, Inc. v. Waste Mgmt. Holdings, Inc.*, 219 S.W.3d 563, 587 (Tex. App.—Austin 2007, pet. denied)). "Thus, an amended pleading alleging a new cause of action relates back to the original filing and is not subject to a limitations defense if the original pleading was filed within the limitations period and if the amendment is not based on a wholly new, distinct, or different transaction." *J.K. and Susie L. Wadley Research Institute & Blood Bank v. Beeson*, 835 S.W.2d 689, 698 (Tex. App.—Dallas 1992, writ denied).

The Court finds that Plaintiff's breach of contract claim also shares the same actors and the same underlying operative facts. *White v. Baylor All Saints Medical Center*, No. 07-08-0023-CV, 2009 WL 1361612, at *2 (Tex. App.—Amarillo 2009, pet. denied). Furthermore, since both federal rule 15(c) and § 16.068 are remedial statutes designed to protect litigants from losing their claims to a limitations period in cases where it would otherwise occur, "it should be liberally construed and applied to effect that purpose." *Milestone Properties, Inc. v. Federated Metals Corp.*, 867 S.W.2d 113, 116 (Tex. App.—Austin 1993, writ ref'd); *see Williams v. U.S.*, 405 F.2d 234, 236 (5th Cir. 1968). By applying the relation-back doctrine liberally, as it is required to do, this Court finds that Plaintiff's breach of contract claim relates back to her original pleadings. Since the only ground alleged by Defendants as the basis for dismissal has been rendered inapplicable by this Court's application of the relation-back doctrine, Defendants' motion to dismiss Plaintiff's breach of contract claim against Cover Girls is denied.

## VI.     Conclusion

For the foregoing reasons, the Court holds that Plaintiff has plausibly alleged: (1) a § 1981 claim against Cover Girls when she was "barred" from the club in November 2017, (2) breach of contract claims against Cover Girls from late November 2017, and (3) a § 1981 failure to hire claim against Splendor from 2021. Accordingly, the Court **DENIES** the Defendants' Fourth Motion to Dismiss as to those claims. It does, however, **GRANT** Defendants' Fourth Motion to Dismiss on all other grounds and dismisses those claims with prejudice.

Signed at Houston, Texas, this 28th day of September, 2022.

Andrew S. Hanen
United States District Judge