United States District Court
Southern District of Texas

**ENTERED**

May 24, 2023

Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CHANEL E.M. NICHOLSON, | § | |
| | § | |
| *Plaintiff*, | § | |
| v. | § | CIVIL ACTION NO. 4:21-cv-2624 |
| | § | |
| W.L. YORK, INC. d/b/a COVER GIRLS, *et al.*, | § | |
| | § | |
| | § | |
| *Defendants*. | | |

## ORDER

Pending before the Court are Defendants D WG FM, Inc., d/b/a Splendor ("Splendor") and W.L. York, Inc., d/b/a Cover Girls' ("Cover Girls") (collectively, "Defendants") Motion for Summary Judgment (Doc. No. 61). Plaintiff Chanel E.M. Nicholson ("Nicholson" or "Plaintiff") responded in opposition (Doc. No. 62), and Defendants replied (Doc. No. 64). Having considered the briefings and applicable law, the Court hereby **GRANTS** Defendants' Motion for Summary Judgment.

### I.    Factual Background

This case primarily involves alleged violations of 42 U.S.C. § 1981 based on racial discrimination. Plaintiff is African American and was a dancer who performed at adult entertainment clubs Centerfolds, Splendor, Cover Girls for varying periods of time between September 2013 and November 2017.

At all three clubs, Plaintiff signed a "Licensing and Access Agreement" ("LAA").[1] These agreements established, among other things, that (1) Plaintiff was an independent contractor, (2) each side could terminate the relationship at will, (3) each club would grant access to its premises

---

[1] While similar in verbiage, each of these agreements were club-specific. None of these agreements appear to have expiration dates.

for the dancer to perform subject to other policies within the agreement, and (4) Plaintiff was permitted to set her own hours and shifts.

Plaintiff began dancing at Centerfolds in August 2013. In late September 2014, Plaintiff contends she was "barred" from Centerfolds. After Centerfolds "barred" her, Plaintiff began dancing at Splendor in November 2014. While Plaintiff was a dancer at Splendor, she alleges that she was turned away from club staff who stated, among other claims, that "too many Black girls" were working. Although Plaintiff did not specify when she left Splendor, she pleaded that it was before she began working at Cover Girls in November 2016 and her departure was apparently triggered when Splendor "barred" her from performing after she refused to pay the club a fine.

In November of 2016, Plaintiff began dancing at Cover Girls after entering into an LAA with that club. While at Cover Girls, Plaintiff alleges that she was frequently turned away from performing when she showed up to work, similar to her experience at Splendor. In late November 2017, Plaintiff claims she arrived to dance at Cover Girls and was "barred" after being informed that there were "too many Black girls" working already.

Subsequently, Plaintiff did not dance for several years because she became pregnant. In August 2021, Plaintiff went to Splendor in hopes of "reviv[ing] her career as a dancer" but Splendor informed Plaintiff that they were not hiring.

Plaintiff filed this lawsuit on August 12, 2021, asserting various claims for unlawful and intentional racial discrimination under 42 U.S.C. § 1981 against Centerfolds, Splendor, Cover Girls, and individuals Ali Davari and Hassan Davari, who allegedly owned the clubs. After amending her complaint several times, Plaintiff's Third Amended Complaint asserted causes of action for breach of contract and discrimination under § 1981. In response to Plaintiff's Third Amended Complaint, Defendants filed their Motion to Dismiss (Doc. No. 48).

2

This Court granted in part and denied in part Defendants' motion (Doc. No. 51). In that Order, the Court dismissed all of Plaintiff's claims as they pertained to Centerfolds, Ali Davari, and Hassan Davari for failure to state a claim and because her § 1981 claims were barred by the applicable statute of limitations. (*Id.*). Of Plaintiff's remaining claims, the Court found that Plaintiff plausibly alleged: (1) a § 1981 claim against Cover Girls from when she was "barred" from the club in November 2017, (2) a breach of contract claim against Cover Girls from November 2017, and (3) a § 1981 failure to hire claim against Splendor from 2021. (*Id.* at 21).

Defendants now move for summary judgment on Plaintiff's three remaining claims that survived their Motion to Dismiss. (Doc. No. 61). Specifically, Defendants contend that all three of Plaintiff's claims are time barred or fail on the merits. (*Id.*). Plaintiff responded in opposition (Doc. No. 62) and Defendants replied (Doc. No. 64).

## II.   Legal Standards

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

Once a movant submits a properly supported motion, the burden shifts to the non-movant to show that the court should not grant the motion. *Celotex*, 477 U.S. at 321–25. The non-movant then must provide specific facts showing that there is a genuine dispute. *Id.* at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must draw all

3

reasonable inferences in the light most favorable to the nonmoving party in deciding a summary judgment motion. *Id.* at 255. The key question on summary judgment is whether there is evidence raising an issue of material fact upon which a hypothetical, reasonable factfinder could find in favor of the nonmoving party. *Id.* at 248. It is the responsibility of the parties to specifically point the Court to the pertinent evidence, and its location, in the record that the party thinks are relevant. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). It is not the duty of the Court to search the record for evidence that might establish an issue of material fact. *Id.*

### III.   Analysis

A. <u>Section 1981 Claim Against Splendor</u>

Defendants argue that summary judgment must be granted as to Plaintiff's § 1981 failure to hire claim against Splendor because it (1) accrued outside the applicable statute of limitations and (2) Plaintiff lacks evidence showing that race was the "but for" reason she was turned away from Splendor in August 2021. (Doc. No. 61 at 3).

First, according to Defendants, Plaintiff's "failure to hire" claim against Splendor is time barred because it was miscategorized as a failure to hire claim and is actually an intentional discrimination claim. Defendants maintain that Plaintiff was never fired, barred, or terminated from the club in November 2016. When Plaintiff requested a position from Splendor in August 2021 following her pregnancy, Defendants argue that Plaintiff was still under the impression that the LAA she executed in 2014 with Splendor remained in force and she did not believe she needed to apply again or be re-hired. Thus, according to Defendants, Plaintiff's remaining claim against Splendor is not a § 1981 failure to hire claim, but rather a § 1981 unlawful discrimination claim, and time barred because it began accruing in September 2014 and the statute of limitations expired in September 2018. To support these contentions, Defendants cite to Plaintiff's deposition, where

4

she states that her employment at Splendor "came to an end" in September 2016 but "[Splendor] didn't really fire me. They just didn't let me in the club." (Nicholson Deposition, Doc. No. 61-1 at 22:3-13, 127:7-10). Plaintiff also testified that she knew she never got fired, so she did not think she needed "to go through the whole rehiring process again" when she went to Splendor in 2021. (*Id.* at 84:10-85:15). Now having the benefit of Plaintiff's testimony, Defendants contend that Plaintiff's § 1981 unlawful discrimination claim was mischaracterized as a "failure to hire" claim, and thus time barred.

Second, Defendants argue that even if Plaintiff's claim is timely, she lacks evidence to raise a genuine dispute of material fact that race was the but-for reason she was turned away from Splendor in 2021. To support this contention, Defendants cite to Plaintiff's deposition testimony, where she admits no one at Splendor told her they were not hiring her because of her race. (*Id.* at 83:17-19). Without more, Defendants maintain that Plaintiff's claim against Splendor fails on the merits.

In response, Plaintiff advances several arguments. (Doc. No. 62). First, Plaintiff invokes what she calls "the law of the case" doctrine, without any supporting case law or explanation as to how this theory applies to her arguments. Second, Plaintiff argues that since this Court "has already implicitly ruled that claims against Splendor from excluding Plaintiff on August 11, 2021 are not time barred, as they were not dismissed along with the other Section 1981 claims against Splendor relating to events prior to 2017 that were time-barred in the Order." (*Id.* at 3). Third, Plaintiff maintains that Splendor turning her away in 2021 qualifies as a discrete discriminatory act under the U.S. Supreme Court's holding in *Nat'l R.R. Passenger Corp. v. Morgan*, which states that each discrete act of discrimination "starts a new clock for filing charges alleging that act." 536 U.S. 101, 113 (2002); (*Id.*).

Finally, Plaintiff maintains that she has evidence to create a genuine dispute of material fact that Splendor refused to hire her because of her race. (*Id.* at 4). She states in her declaration that when she visited Splendor in August 2021, an unnamed manager informed her they were not hiring. (Nicholson Declaration, Doc. No. 60-2 at 3). After speaking with this unnamed manager, Plaintiff avers that she spoke to "Joey" (LNU) who informed her that "he would hire [her] in a heartbeat, but they're not taking any more black girls at this location, especially since COVID," and that he had "had his hiring privileges taken from him." (Nicholson Deposition, Doc. No. 61-1 at 80:12-14; 81:1-13). Plaintiff also refers to her deposition testimony, where she reiterates that Joey stated that Splendor was not hiring black girls and that he informed her that staff "above him" told him that he was not permitted to allow more black dancers on the premises. (*Id.* at 90:16-25). Plaintiff also argues that Splendor's "long-standing policy of discriminatory practices" are corroborated by the deposition testimony of Andy Skwera ("Skwera"), who allegedly worked as a "long-time manager of various Davari' brothers' adult entertainment businesses in the Houston area," including Cover Girls and Splendor. (Skwera Deposition, Doc. No. 60-5 at 5:8-14). Specifically, Plaintiff notes portions of Skwera's testimony where he discussed the "reputation" of clubs owned and operated by the Davari brothers not offering positions to Black women, other managers allegedly refusing to hire dark skinned women, and actions of others supposedly in management positions at other clubs, such as Cover Girls and Gold Cup, who upheld a "long-established racist policy" that resulted in Plaintiff's exclusion from Splendor. (*Id.* at 42:3-11; 48:18-21).

As an initial matter, in Plaintiff's Third Amended Complaint, it was far from clear what specific grounds Plaintiff was asserting her § 1981 claims against Splendor. Given these significant ambiguities in Plaintiff's pleadings and given the fact that the Court was evaluating a motion to

dismiss, this Court read, as it is require to, Plaintiff's contentions against Splendor in the light most favorable to her. It evaluated Plaintiff's claims against Splendor accordingly based on the scant facts in the pleadings. Thus, it appeared from the Third Amended Complaint that Plaintiff had pleaded three causes of action against Splendor: two § 1981 intentional discrimination claims— being "barred" at the club due to its allegedly racist policy, and intentional discrimination due to Splendor's alleged mandatory tip sharing policy; and a separate § 1981 failure to hire claim from when she was turned away from the club in 2021 after requesting a position as a dancer.

In its Order on the Motion to Dismiss, this Court dismissed the § 1981 intentional discrimination claims against Splendor because they were time barred by a four year statute of limitations. (Doc. No. 51 at 6-9). The Court found that since Plaintiff had danced at Splendor from September 2014 to November 2016, these claims expired some time between September 2018 and November 2020 (at the latest) and were long expired by the time Plaintiff filed this lawsuit in August 2021. (*Id.* at 9). Plaintiff's remaining § 1981 failure to hire claim against Splendor only survived Defendants' Motion to Dismiss because although Splendor had moved to dismiss Plaintiff's two intentional discrimination claims under § 1981, the club did not file a motion to dismiss this failure to hire claim under Rule 12(b)(6). (*Id.* at 11, n. 6). Since Splendor did not move to dismiss this failure to hire claim, the Court did not consider it in its Order on Defendants' Motion to Dismiss. It explicitly noted that its Order was based upon the fact that Splendor had failed to move on this particular cause of action. (*Id.*).

This Court now finds, as a matter of law, based on the summary judgment evidence presented (which includes Plaintiff's own testimony), that Plaintiff's remaining § 1981 claim against Splendor is time barred by the statute of limitations. Accrual of a claim under § 1981 commences when the plaintiff has actual knowledge of the violation or has knowledge of facts

7

that, in the exercise of due diligence, would have led to actual knowledge. *In re Monumental Life Ins. Co.*, 365 F.3d 408, 420 (5th Cir. 2004). Plaintiff's remaining claim against Splendor accrued in September 2014. Plaintiff admits in her deposition testimony that she was denied access to Splendor as early as a week after signing her LAA in September 2014—when Plaintiff would be charged with knowledge of the allegedly discriminatory act for accrual of her claim. Plaintiff also admitted in her deposition testimony she experienced discrimination that "eliminated [her] right or impaired [her] right to access to club" right after she signed her LAA with Splendor in September 2014 and that the alleged discrimination continued throughout her dance career presumably until she departed the club in November 2016.

Moreover, contrary to Plaintiff's arguments, being turned away from Splendor in August 2021 does not toll or restart the statute of limitations. The only way that Plaintiff being turned away in August 2021 would toll the statute of limitations is if the alleged discriminatory act was based upon Splendor's failure to hire Plaintiff. That was not the case here. Plaintiff herself admits this in her Response in opposition, where she states that her claims against Splendor were "more accurately characterized as being "excluded," "barred," or "refused or denied access" than as a "refusal to hire." (Doc. No. 62 at 3, n. 2). She also testified that when she revisited Splendor in August 2021, she considered her original LAA to still be in force, she was not terminated from Splendor because she voluntarily ceased performing at the club in November 2016, and thus had no expectation of entering into a new contract or being rehired in 2021. Thus, according to Plaintiff's sworn testimony, her remaining § 1981 claim accrued in September 2014 and being turned away from Splendor in August 2021 was simply an effect of the alleged initial discriminatory act, which took place in 2014.

8

Plaintiff's attempt to apply the so-called "law of the case" doctrine among her other initial arguments, also does not remedy her statute of limitations problem. First, Plaintiff's arguments mischaracterize this Court's findings in its Order on Defendants' Motion to Dismiss. As explained in detail, Plaintiff's remaining claim against Splendor only survived Defendants' Motion to Dismiss because Defendants failed to move on that particular claim. (Doc. No. 51 at 11, n. 6). The Court, by dismissing Plaintiff's § 1981 intentional discrimination claims against Splendor in that Order, but not her remaining claim, did not implicitly or explicitly rule that the claim was not time barred, as Plaintiff suggests. The Court did not even address the merits on that particular claim because Defendants did not move on it. (*Id.*).

Plaintiff also argues that her claim against Splendor is not time barred under because being turned away in 2021 tolls the statute of limitations constitutes a "discrete and egregious discriminatory act" under the continuing violations doctrine, which would start a new limitations clock for filing charges alleging that act. (Doc. No. 62 at 3); *Nat'l R. R. Passenger Corp.*, 536 U.S. at 11. Plaintiff, however, is recycling arguments that this Court already found inapplicable in its Order on the Motion to Dismiss. As discussed in that Order, the continuing violations doctrine "has since been limited by the United States Supreme Court to apply only to § 1981 claims alleging a hostile work environment." (Doc. No. 51 at 14). Since Plaintiff has not pleaded a cause of action alleging a hostile work environment, this doctrine does not apply to Plaintiff's remaining claim against Splendor. Moreover, given that Plaintiff avers that she was never terminated from Splendor and the original LAA remained in force when she revisited the club in 2021, being turned away in 2021 was no different than the first time she was denied access in September 2014—when Plaintiff could be charged with knowledge of the allegedly discriminatory act. Thus, her § 1981 claim against Splendor accrued in approximately September 2014 and is time barred.

Accordingly, this Court finds that Plaintiff's remaining claim against Splendor arising from visiting the club in 2021 is not a failure to hire claim under § 1981, but rather an extension of her § 1981 intentional discrimination claims. Given that this claim began accruing in September 2014 and has a four year statute of limitations and Plaintiff filed this lawsuit in August 2021, it is time barred.[2] Accordingly, Defendants' Motion for Summary Judgment as to Plaintiff's claim against Splendor is hereby granted.

## B. Cover Girls Breach of Contract Claim

Defendants argue that Plaintiff's breach of contract claim against Cover Girls is time barred by the four year statute of limitations under Texas law. (Doc. No. 61 at 11). Under Texas law, the cause of action in a breach of contract accrues when the contract is breached or when the breaching party has notice of facts sufficient to place them on notice of the breach. *Taub v. Houston Pipeline Co.*, 75 S.W.3d 606, 618 (Tex. App.—Texarkana 2002, pet. denied).

In Plaintiff's Third Amended Complaint, she pleaded that Cover Girls' alleged breach of contract occurred in November 2017 when she was "barred" from the club. (Doc. No. 47 at 8-9). Viewing Plaintiff's pleadings in a light most favorable to her, this Court found in the motion to dismiss context that because the alleged breach occurred in late November 2017, it survived the four year statute of limitations under Texas law because Plaintiff's lawsuit was filed on August 12, 2021. (Doc. No. 51 at 17-20). In her Third Amended Complaint, Plaintiff did not allege or even mention that she had been "barred" at Cover Girls prior to November 2017.

---

[2] This Court does not need to address Plaintiff's § 1981 claim against Splendor substantively on the merits because it is time barred. Nevertheless, without addressing the various hearsay and evidentiary issues Plaintiff's alleged evidence implicates, and even if Plaintiff's claims are not time barred or being turned away in August 2021 qualifies as a distinct adverse employment action, she fails to raise an issue of material fact that her race was the but-for cause of Splendor's alleged refusal to grant her a position as a dancer.

Defendants advance two arguments. First, that the alleged breach—Plaintiff being "barred" from the club—accrued in November 2016 immediately after Plaintiff executed her LAA with Cover Girls; and second, that Plaintiff's claim fails on the merits because she testified that she was not "barred" from Cover Girls, but rather "denied access" only, no breach took place.

Under Defendants' first argument, they argue that if the alleged breach commenced in November 2016, rather than November 2017 as Plaintiff previously alleged, then Plaintiff's breach of contract claims are barred by the four year statute of limitations since this lawsuit was filed in August 2021. To support this contention, Defendants demonstrate that Plaintiff testified that she was "denied access" on account of her race almost immediately after executing her LAA with Cover Girls in November 2016. (Doc. No. 6 at 11). Plaintiff testified that as early as the first week after signing her LAA at Cover Girls, she lost access to the club and was told she could not dance at the club because of her race. (Nicholson Deposition, Doc. No. 61-1 at 55:21-56:12). Plaintiff also testified that she would appear at Cover Girls an average of six times per week to work a shift, but was only allowed to enter the premises to work about 50 percent of the time. (*Id.* at 50:6-51:23). Defendants also refer to Plaintiff's cross Motion for Summary Judgment for support, where she states that "[t]here were numerous prior breaches of the Cover Girls Agreement, starting from the day it was entered, which are relevant to support the existence of the breach and the illegal discrimination by denial of access to [Plaintiff] in late November 2017." (Doc. No. 60 at 4). According to Defendants, since the alleged breach took place in November 2016, Plaintiff's denial of access to Cover Girls in November 2017 was "simply the effect of the same discriminatory act that Cover Girls had allegedly implemented and made known to her as early as November 2016—that her access to the club would be limited based on the number of Black entertainers already

present." (Doc. No. 61 at 12). Thus, Defendants argue Plaintiff's breach of contract claim is time barred.

Defendants' second argument maintains that because Plaintiff testified that she was only "denied access" from Cover Girls, rather than "barred," Plaintiff's breach of contract claim fails on the merits. According to Defendants, new theories of contractual liability not already present in the pleadings cannot be considered by this Court. Defendants argue that Plaintiff's breach of contract claim against Cover Girls only survived the Motion to Dismiss on the premise that she was "barred" from Cover Girls. Since Plaintiff testified she was not "barred" but rather "denied access" to Cover Girls, Defendants argue that Plaintiff is bringing a new theory of contractual liability and that she was thus never "barred" from the club in a way that would result in a breach of contract. (Doc. No. 61 at 11). To support this contention, Defendants cite to Plaintiff's deposition testimony, where, when asked if she was "barred from working at Cover Girls" in November 2017, responded, "I wouldn't necessarily say barred. I would say I was denied access to the club." When asked to clarify what she meant by "denied access," she stated that it meant "[she] wasn't allowed to go to work even though [she] worked there, even though [her] contract said I can go to work." (Doc. No. 61-1 at 43:12-44:3). According to Defendants, being "denied access" is a distinct theory of contractual liability from being "barred," so Plaintiff's breach of contract claim thus fails on the merits.

In response, Plaintiff counters that she has not advanced a new theory of contractual liability and that Defendants' arguments are focused on form over substance. Specifically, Plaintiff contends that Defendants are erroneously arguing that because Plaintiff testified she was "denied access" to Cover Girls rather than "barred" from the club as pleaded in her Third Amended Complaint, that Plaintiff has taken a new position not within the scope of her pleadings. Plaintiff

12

argues that being "barred" and being "denied access" are the same.[3] Accordingly, Plaintiff's deposition testimony that she was "denied access" maintains that Defendants breached the portion of her LAA which states, "The Dancer shall also determine her schedule in performing the services, including but not limited to, her ability to arrive and leave the premises at any time without penalty" (Cover Girls LAA, Doc. No. 60-4 at 7).

Based on the evidence, the Court finds that Plaintiff's breach of contract claim against Cover Girls is time barred because it accrued in approximately November 2016. Based upon her own deposition testimony, Plaintiff admits that as early as a week after signing her LAA with Cover Girls in November 2016, she was denied access to the club when she showed up for shifts on the basis of race. Since a breach of contract claim accrues when the contract is breached, Plaintiff's testimony demonstrates that the alleged breach took place in approximately November 2016, rather than November 2017, as Plaintiff previously alleged in her Third Amended Complaint. Therefore, the statute of limitations expired in approximately November 2020 months before Plaintiff filed this dispute in August 2021. Given that the claim is time barred, the Court does not find a need to substantively address the merits of Plaintiff's breach of contract claim. Accordingly, Defendants' Motion for Summary Judgment as to Plaintiff's breach of contract claim against Cover Girls is hereby granted.

C. Cover Girls § 1981 Claim

Defendants argue that Plaintiff's § 1981 intentional discrimination claim against Cover Girls when she was "barred" from the club accrued in November 2016, rather than November

---

[3] Although this Court will not address Plaintiff's breach of contract claim against Cover Girls substantively on the merits because it is time barred, it generally agrees that "denied access to" versus "barred" in describing not being allowed to dance at Cover Girls in November 2017 is a distinction without a difference. Regardless, it is a topic about which Plaintiff cannot complain, as it was Plaintiff, herself, in her deposition testimony, that attempted to draw this distinction.

2017, and should be dismissed as a matter of law it is time barred. The parties draw from the same sources of evidence as Plaintiff's breach of contract claim.

This Court finds that Plaintiff's § 1981 intentional discrimination claim is time barred. This claim originally survived Defendants' Motion to Dismiss because Plaintiff pleaded an approximate date she was "barred" from Cover Girls—November 2017, as pleaded in her Third Amended Complaint—and satisfied § 1981's but-for requirement by plausibly alleging that she was "barred" because of her race. (Doc. No. 51 at 15). Following discovery, however, Plaintiff admitted in her deposition testimony that she was "barred" or "denied access" to Cover Girls as early as the week following her signing her LAA with the club in November 2016. Since the limitations period for a § 1981 claim commences when the plaintiff knows or reasonably should know that the discriminatory act occurred—and this act occurred in approximately November 2016—Plaintiff's claim expired in November 2020. Accordingly, Defendants' Motion for Summary Judgment a to Plaintiff's § 1981 intentional discrimination claim against Cover Girls is hereby granted.

## IV.   Conclusion

For the foregoing reasons, this Court hereby **GRANTS** Defendants' Motion for Summary Judgment (Doc. No. 61).

Signed at Houston, Texas, this 24th day of May, 2023.

Andrew S. Hanen
United States District Judge