# United States Court of Appeals
## for the Fifth Circuit

United States Courts
Southern District of Texas
FILED

*March 26, 2024*

Nathan Ochsner, Clerk of Court

No. 23-20440

United States Court of Appeals
Fifth Circuit

**FILED**

March 4, 2024

Lyle W. Cayce
Clerk

CHANEL E.M. NICHOLSON, *On Behalf of Herself and Other Similarly Situated Plaintiffs*,

*Plaintiff—Appellant,*

*versus*

W.L. YORK, INCORPORATED, *doing business as* COVER GIRLS;
D WG FM, INCORPORATED, *doing business as* SPLENDOR,

*Defendants—Appellees.*

---

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:21-CV-2624

---

Before STEWART, DUNCAN, and ENGELHARDT, *Circuit Judges*.
PER CURIAM:[*]

Chanel Nicholson filed this class action lawsuit against various adult entertainment clubs asserting claims under 42 U.S.C. § 1981 for unlawful discrimination and breach of contract. The district court dismissed some of the defendants from the suit and then rendered summary judgment in favor of the remaining defendants on grounds that Nicholson's claims were barred

---

[*] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

No. 23-20440

by the applicable statute of limitations. Nicholson appealed. For the following reasons, we AFFIRM.

## I. FACTUAL & PROCEDURAL BACKGROUND

Nicholson is African American and at various times between September 2013 and November 2017, she performed as a dancer at three adult entertainment clubs in Houston: Cover Girls,[1] Splendor,[2] and Centerfolds.[3] At each of these clubs, Nicholson signed a "Licensing and Access Agreement" ("LAA"). The LAAs provided in relevant part that: (1) Nicholson was an independent contractor; (2) each side could terminate the relationship at will; (3) each club would grant Nicholson access to its premises to perform subject to other policies within the agreement; and (4) Nicholson was permitted to set her own hours and shifts. None of the LAAs had expiration dates.

Nicholson began dancing at Centerfolds in August 2013. In late September 2014, she claims she was "barred" from Centerfolds for not complying with its tip-sharing policy, so she became a dancer at Splendor later that month. Soon after she began working at Splendor, Nicholson alleges that she was turned away by club staff when she showed up to work because she was told there were "too many Black girls" already working as dancers on the premises. Eventually, she claims she was "barred" from Splendor after she refused to pay a fine to the club.

After leaving Splendor, Nicholson began working as a dancer at Cover Girls in November 2016. Similarly, she alleges that shortly after she began

---

[1] W.L. York, Inc., d/b/a Cover Girls.

[2] D WG FM, Inc., d/b/a Splendor.

[3] A.H.D. Houston, Inc., d/b/a Centerfolds.

No. 23-20440

working at Cover Girls, she was denied access to the club because she was told there were "too many Black girls" already dancing on the premises. She further alleges that, in late November 2017, she was again denied access to Cover Girls for the same discriminatory reason. She contends that she was then "barred" from dancing at Cover Girls.

Nicholson states that, after she was barred from Cover Girls, she began working at the Solid Platinum Cabaret until "pregnancy forced her to stop." Then on June 24, 2021, she sought to "revive her career as a dancer" and went back to Centerfolds requesting to work but was told they were not hiring. Thereafter, in August 2021, she went back to Splendor requesting to work as a dancer but alleges that she was again turned away because she was Black.

On August 12, 2021, Nicholson filed a class action lawsuit asserting claims of unlawful discrimination under 42 U.S.C. § 1981 against Centerfolds, Cover Girls, Splendor, Ali and Hassan Davari (alleged club owners), and the Solid Platinum Cabaret. A month later, she moved to dismiss Solid Platinum Cabaret from the suit, and the district court granted her motion. In her third amended complaint, Nicholson added claims for breach of contract to her § 1981 claims against the remaining defendants.

In June 2022, the remaining defendants moved to dismiss Nicholson's claims as set forth in her third amended complaint under Federal Rule of Civil Procedure 12(b)(6). The district court granted in part and denied in part the defendants' motion. In its order of partial dismissal, the district court dismissed Nicholson's claims against Centerfolds and the Davaris for failure to state a claim and because her § 1981 claim was barred by the statute of limitations. It allowed, however, Nicholson to proceed with her (1) § 1981 claim against Cover Girls for being barred from the club in November 2017,

No. 23-20440

(2) breach of contract claim against Cover Girls from November 2017, and (3) § 1981 claim against Splendor for being denied access to the club in 2021.[4]

Both Nicholson and the remaining defendants, Splendor and Cover Girls (collectively, "Defendants"), then cross-moved for summary judgment. The district court granted Defendants' motion, concluding there was no genuine dispute of material fact that Nicholson's three remaining claims against Cover Girls and Splendor were barred by the applicable statute of limitations. It then denied Nicholson's motion for summary judgment. Nicholson filed a motion to alter or amend the judgment pursuant to Federal Rule of Civil Procedure 59(e), which the district court also denied. This appeal ensued.[5]

## II. STANDARD OF REVIEW

We conduct a de novo review of a district court's grant of summary judgment. *Sanders v. Christwood*, 970 F.3d 558, 561 (5th Cir. 2020). Summary judgment is proper 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (citing FED. R. CIV. P. 56(a)). A dispute regarding a material fact

---

[4] Although the district court's summary judgment order initially labels this claim as one for "failure to hire" based on Nicholson's pleadings, it subsequently concluded after analyzing the claim that it was not a failure to hire claim but rather an extension of her initial discrimination claim arising from being "refused or denied access."

[5] We note that Nicholson's notice of appeal indicates that she is only appealing the district court's order denying her Rule 59(e) motion to alter or amend its summary judgment in favor of Defendants. However, as we have done in past similar cases, we will liberally construe her notice of appeal to include an appeal of the district court's underlying summary judgment. *See Tr. Co. Bank v. U.S. Gypsum Co.*, 950 F.2d 1144, 1148 (5th Cir. 1992) ("Interpreting notices of appeal liberally, this [c]ourt often has exercised its appellate jurisdiction—despite an improper designation under [Federal Rule of Appellate Procedure] 3(c)—where it is clear that the appealing party intended to appeal the entire case.").

No. 23-20440

is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citation omitted). "Conclusional allegations and unsubstantiated assertions may not be relied on as evidence by the nonmoving party." *Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). "A panel may affirm summary judgment on any ground supported by the record, even if it is different from that relied on by the district court." *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 438 (5th Cir. 2012) (internal quotation marks and citation omitted).

## III. DISCUSSION

On appeal, Nicholson's overarching position is that the district court erred in holding that her claims against Cover Girls and Splendor were barred by the four-year statute of limitations applicable to her § 1981 claims. In support of this argument, she contends that even though she first experienced discrimination from Cover Girls in 2016 and from Splendor in 2014, she was subjected to subsequent discrete acts of discrimination from both entities that reset the four-year statute of limitations. Thus, her claims in this case, which were not filed until August of 2021, were timely.[6] We disagree.

---

[6] On appeal, Nicholson fails to advance an argument with regard to her breach of contract claim against Cover Girls. Accordingly, we consider any argument as to that issue waived. *See Adams v. Unione Mediterranea Di Sicurta*, 364 F.3d 646, 653 (5th Cir. 2004) ("Issues not raised or inadequately briefed on appeal are waived.").

No. 23-20440

"Section 1981 provides that '[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts.'" *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 386 (5th Cir. 2017) (quoting 42 U.S.C. § 1981(a)). Under 1981(b), to "'[m]ake and enforce contracts' is defined as 'the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.'" *Id.* (quoting 42 U.S.C. § 1981(b)). A plaintiff establishes a § 1981 claim for contractual discrimination by alleging "that (1) they are members of a racial minority; (2) Defendants intended to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute[.]" *Id.*

When a § 1981 claim arises post-contract formation, it is subject to a four-year statute of limitations period under 28 U.S.C. § 1658.[7] *See Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004); *see also Mitchell v. Crescent River Port Pilots Ass'n*, 265 F. App'x 363, 367 (5th Cir. 2008) (per curiam) (unpublished) (observing that "if [the plaintiff's] causes of action arise under a federal statute enacted after December 1, 1990, [the court] must apply a four-year statute of limitations" period). Under § 1981, federal law determines when the limitations period accrues. *In re Monumental Life Ins. Co.*, 365 F.3d 408, 420 (5th Cir. 2004). "It commences when the plaintiff either has actual knowledge of the violation or has knowledge of facts that, in the exercise of due diligence, would have led to actual knowledge." *Id.*

*A. Nicholson's Claims Against Splendor*

---

[7] It is undisputed that Nicholson's § 1981 claims in this case arose post-contract formation and are thus subject to the four-year statute of limitations period. The dispute herein centers around when Nicholson's claims accrued.

No. 23-20440

On appeal, Nicholson first argues that her claims against Splendor accrued on August 11, 2021, because she was denied access to the club on that date on account of her race. Although she alleges that Splendor's first acts of unlawful discrimination against her took place as early as 2014 and continued through 2016, she contends that the four-year statutory limitations period applicable to those claims is not relevant to her August 2021 claim. In support of this reasoning, she argues that under *National Railroad Passenger Corp. v. Morgan*, Splendor's refusal to grant her access to the club on August 11 was "a clear example of a discrete discriminatory act" that restarted the four-year statute of limitations period applicable to her § 1981 claims. 536 U.S. 101, 113 (2002). She further asserts that, although she seeks to apply *Morgan*'s holding to her claims in this case, she is not advancing a hostile work environment claim and she "does not need to rely on the continuing violations doctrine for her claim against Splendor to be viable." Her arguments, however, misconstrue the applicable precedent.

In *Morgan*, the Supreme Court squarely addressed the continuing violations doctrine, distinguishing between claims that are "discrete discriminatory acts" and claims that form one continuing violation, *i.e.*, hostile work environment claims. *Id.* at 115. There, the Court ultimately held that "[a] charge alleging a hostile work environment claim . . . will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period." *Id.* at 122. *Morgan*, however, is inapplicable to Nicholson's claim here. This is because the act of discrimination that she alleges took place in 2021 that forms the basis of her § 1981 claim against Splendor was merely a continuation of Splendor's original act of discrimination that she alleges took place in 2014, upon which the limitations period has already elapsed.

Nicholson alleges that she was turned away or denied access from Splendor's premises in 2021 because she was Black. Yet, she also alleges that

No. 23-20440

she was turned away or denied access from Splendor's premises in 2014 for the exact same reason. Nothing changed between the instance of discrimination that she alleges took place in 2014 and the instance of discrimination that she alleges took place in 2021. If anything, her allegation is simply that she was first turned away by Splendor for a discriminatory reason in 2014 and, when she checked back in with Splendor in 2021, nothing had changed. Splendor's position remained the same: Nicholson was refused access to the premises because she was Black. Accordingly, these are not "discrete discriminatory acts" that are "independently discriminatory" as contemplated in *Morgan*. *Id.* at 113. Thus, in order for the limitations period to be potentially extended under *Morgan*, her claims would have to fall under the continuing violations doctrine. *Id.* at 122. But as the Supreme Court and this court have clarified, the continuing violations doctrine applies only in the context of hostile work environment claims, which Nicholson does not allege in this case.[8] *Id.*; *see also Heath v. Bd. of Supervisors for S. Univ. & Agric. & Mech. Coll.*, 850 F.3d 731, 737 (5th Cir. 2017) ("Claims alleging discrete acts are not subject to the continuing violation doctrine; hostile workplace claims are. Hostile environment claims are 'continuing' because they involve repeated conduct, so the 'unlawful employment practice' cannot be said to occur on any particular day.").

As the district court accurately observed in the proceedings below, Nicholson alleged in her deposition testimony that she was first denied access to Splendor's premises as early as a week after signing her LAA in September 2014 and that the alleged discrimination continued until she left the club in

---

[8] We take no position on whether Nicholson's claims would succeed under *Morgan* if she had alleged a hostile work environment claim against Splendor or Cover Girls.

2016.[9] Thus, her claims of unlawful discrimination began to accrue in 2014. *In re Monumental Life Ins. Co.*, 365 F.3d at 420 (noting that the accrual period "commences when the plaintiff either has actual knowledge of the violation or has knowledge of facts that, in the exercise of due diligence, would have led to actual knowledge"). Moreover, Nicholson conceded in her deposition testimony that she returned to Splendor in August 2021 believing that her LAA was still in effect and the record does not reflect that the LAA ever expired.[10] This further supports the conclusion that her denial of access to the club on that date on account of her race was merely a continued effect of the first alleged discriminatory act that took place in 2014. Indeed, as the district court pointed out, Nicholson indicated in her opposition to Defendants' motion for summary judgment that her claims against Splendor were more properly categorized as being "refused or denied access" as opposed to a "refusal to hire." Consequently, because she did not file her § 1981 claim of unlawful discrimination against Splendor until August 2021, we agree with the district court that her claim was barred by the applicable four-year statute of limitations period. *Id.*

### B. Nicholson's Claims Against Cover Girls

Nicholson's second argument with respect to Cover Girls is nearly identical to her first with respect to Splendor. She claims that her denial of

---

[9] According to Nicholson's deposition testimony, she confirmed that she signed the LAA with Splendor on September 27, 2014. She was then asked by counsel for Defendants, "Did you experience racial discrimination at Splendor that eliminated your right or impaired your right to access the club like right after signing this?" Nicholson replied, "Yes," explaining that the discrimination continued throughout her "whole dance career" at Splendor.

[10] During her deposition, counsel for Defendants asked Nicholson, "So when you went to Splendor in August of 2021, were you expected to sign a new contract?" Nicholson replied, "No." Counsel responded, "And that is because you recalled that you had already signed a contract with Splendor . . . back in 2014?" Nicholson replied, "Yes."

No. 23-20440

access to Cover Girls in November 2017 "was simply one more discrete, discriminatory act," which under *Morgan*, reset the four-year limitations period for her § 1981 unlawful discrimination claim.

Again, Nicholson makes no progress under *Morgan*. Similar to her allegations against Splendor, Nicholson's deposition testimony confirms that as early as her first week after signing the LAA with Cover Girls in November 2016, she was denied access to the club on account of her race.[11] Here, her claim is that nothing changed when she returned to Cover Girls in November 2017—she was again denied access on account of her race. Thus, Cover Girls' first act of discrimination that Nicholson alleges took place in 2016 merely remained ongoing when she returned in 2017. Consequently, her § 1981 claim against Cover Girls began to accrue when she signed the LAA with the club in November 2016. *In re Monumental Life Ins. Co.*, 365 F.3d at 420. Because she did not file her § 1981 claim of unlawful discrimination against Cover Girls until August 2021, we agree with the district court that her claims were barred by the applicable four-year statute of limitations. *Id.*

In sum, the district court did not err in granting summary judgment in favor of Splendor and Cover Girls on grounds that Nicholson's § 1981 claims of unlawful discrimination were time-barred. *See Sanders*, 970 F.3d at 561; FED. R. CIV. P. 56(a).

---

[11] According to Nicholson's deposition testimony, after confirming that she signed the LAA with Cover Girls on November 6, 2016, she was asked by counsel for Defendants, "And do you recall after November 6th, roughly, when, you know, your first—the first time somebody told you you've got to leave for a racist reason?" Nicholson responded, "It was within the first week, but I was kind of used to it. It wasn't like—I don't know. I would just leave and go to the freaking club up the street."

No. 23-20440

## IV. CONCLUSION

For the aforementioned reasons, we AFFIRM the district court's summary judgment in favor of Defendants as well as its order denying Nicholson's Rule 59(e) motion to alter or amend the judgment.